## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NKUMA UCHE, | ) | CASE NO. 4:09CV3123 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| BRUMBAUGH & QUANDAHL, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 84.) Also pending is Plaintiff's Motion for Summary Judgment (Filing No. 90) and numerous other Motions and Objections filed by the parties. As set forth below, Defendant's Motion for Summary Judgment is granted in part, Plaintiff's Motion for Summary Judgment is denied in part, and all but one of Uche's claims are dismissed with prejudice.

### *BACKGROUND*

Plaintiff Nkuma Uche ("Uche") filed his Complaint in this matter on June 19, 2009 (Filing No. 1.)[1] Liberally construed, Uche alleges that Defendant violated the Fair Debt Collection Practices Act (the "FDCPA"). 15 U.S.C. §§ 1692-1692g. In particular, Uche alleges that Defendant failed to adequately verify his debt, failed to inform him of his right to dispute the debt, falsely represented the amount and legal status of his debt, used false

---

[1]On May 20, 2009, Uche filed a nearly identical case against several related Defendants, including employees of Defendant Brumbaugh & Quandahl. (Case No. 4:09CV3106, Filing No. 1.) The parties filed identical pleadings in both cases. Although the issues and arguments are the same in both cases, for clarity and ease of reference, the court will issue a separate, nearly identical, Memorandum and Order and Judgment in Case No. 4:09CV3106.

representations and deceptive means to collect a debt, reported inaccurate information to credit-reporting agencies, engaged in conduct designed to harass, intimidate, or abuse Uche, and attempted to collect a time-barred debt.  (Filing No. 1.)  Defendant filed its Motion for Summary Judgment on June 18, 2010.  (Filing No. 84.)  In support of its Motion, Defendant filed a Brief (Filing No. 85) and an Index of Evidence (Filing No. 86).  Uche did not file a response to Defendant's Motion.  Rather, on July 1, 2010, Uche filed his Motion for Summary Judgment (Filing No. 90), Brief in support (Filing No. 91), and Index of Evidence (Filing No. 92).  Defendant filed an Objection (Filing No. 98), Brief in support of Objection (Filing No. 99) and Index of Evidence (Filing No. 100) in opposition to Plaintiff's Motion.  Plaintiff thereafter filed additional unauthenticated documents in support of his Motion for Summary Judgment.  (Filing Nos. 117 and 118.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1).  If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1).  Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition.  *Id.*  "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response."  *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

2

The parties have each submitted statements of material facts in accordance with the court's Local Rules.  Further, the parties submitted evidence which was properly authenticated by affidavit or sworn deposition testimony.  In light of this, the two pending Motions for Summary Judgment are deemed fully submitted and the court adopts the following undisputed material facts.

### RELEVANT UNDISPUTED FACTS

1.    On March 26, 2008, Capital One Bank transferred Uche's unpaid account balance to North Star Capital Acquisition LLC ("North Star") through a bill of sale.  On the date the account was transferred to North Star, the "aggregate unpaid balance" on Uche's account was $2,617.12 and the Capital One charge off date was October 16, 2004.  (Filing No. 86-3, Attach. 3, at CM/ECF pp. 1-8.)

2.    On June 11, 2008, Brumbaugh and Quandahl, P.C. ("B&Q"), sent Uche a letter.  (Filing No. 86-2, Attach. 2, at CM/ECF p. 8.)

3.    The June 11, 2008, letter stated that B&Q represented North Star.  The letter also stated that it was "an attempt to collect a debt" with a "principal amount" of $1,515.88. (*Id.*)

4.    The June 11, 2008, letter included a section titled "Notice Required by Federal Law," which stated:

1.    Unless, within 30 days after receipt of this letter you dispute the validity of the debt, or any portion thereof, we will assume that the debt is valid.
2.    If you notify us in writing, within 30 days after receipt of this letter that the debt, or any portion thereof, is disputed, we will obtain and mail to you verification of the debt or a copy of any judgment that might have been issued thereon.

3

      3.      If you request of us in writing, within the 30 days after receipt of our letter and notice, we will provide to you the name and address of the original creditor, if different from the current creditor.

(*Id.*)

      5.      On June 24, 2008, Uche sent a letter to B&Q in response to the June 11, 2008, letter.  (Filing No. 100-2, Attach. 2, at CM/ECF pp. 31-32.)

      6.      In his June 24, 2008, letter, Uche states that he "categorically disputed the validity of this debt" and requested that B&Q provide him with seven separate categories of documents and information to support the amount of the debt.  (*Id.*)

      7.      In response to Uche's June 24, 2008, letter, B&Q sent Uche another letter on June 30, 2008.  (Filing No. 86-2, Attach. 2, at CM/ECF p. 9.)

      8.      In the June 30, 2008, letter, B&Q informed Uche that "the account originated as a Capital One Bank account identified with an account number of 5291071729337962, opened on May 26, 2000."  This letter also stated that the "amount due" was $2,703.77.  (*Id.*)

      9.      On July 25, 2008, B&Q filed a complaint against Uche in the Adams County, Nebraska District Court.  Summarized, the complaint alleged that Uche failed to pay Capital One Bank the amount due on account number 5291071729337962, that Capital One Bank transferred the account to North Star, and that the amount due on the date of the filing of the complaint was $2,719.57.  (*Id.* at CM/ECF pp. 10-12.)

      10.     The Adams County, Nebraska District Court complaint further stated that Uche owed "interest at the rate of 21.140% ($.88 per diem) . . . Interest accrues from the date this account was charged off as bad debt by the original creditor."  (*Id.*)

11.     After the filing of the complaint, Uche sent a letter to B&Q on October 16, 2008. (Filing No. 100-2, Attach. 2, at CM/ECF pp. 37-40.)

12.      The October 16, 2008, letter again sets forth a list of 14 separate documents and information that Plaintiff believes were required as "adequate validation of" the "alleged debt." (*Id.*)

13.     The October 16, 2008, letter also requested that an employee of B&Q, Mark Quandahl, "stop contacting [Uche] on the telephone and restrict your contact with [Uche] to writing." (*Id.*)

14.     Defendant did not communicate with Uche after the October 16, 2008, letter except in writing.

15.     Plaintiff does not dispute that he owes a debt which began as a Capital One Bank account, with a principal amount of $1,515.88. (Filing No. 86-1, Attach. 1, at CM/ECF pp. 4-5.)

16.     Uche admits that he received a statement from Capital One Bank on October 15, 2004, which stated the amount due was $1,515.88. (*Id.* at CM/ECF pp. 4-7.)

17.     Uche stated he understands that interest and fees may be assessed when a debt goes unpaid for a period of time and that his agreement with Capital One included interest and fees being assessed if he failed to pay on the account. (*Id.* at CM/ECF pp. 4-5, 10.)

18.     Uche understood the difference between the principal amount listed in the June 11, 2008, letter and amount due listed in subsequent communications. (*Id.* at CM/ECF pp. 4-10.)

19.     There is no evidence that Defendant ever provided any information to a credit reporting agency.  (*Id.* at CM/ECF pp. 14-19; Filing No. 100-2, Attach. 2, at CM/ECF p. 43.)

### *ANALYSIS*

### *I.   Summary Judgment Standard*

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue.  *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion.  *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'"  *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*  Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

6

## II.    Uche's Claims

"The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002) (citing 15 U.S.C. § 1692e).  With this background in mind, the court analyzes each of Uche's claims, which fall into four general categories: claims relating to the verification of Uche's debt, claims relating to the reporting of Uche's debt, claims relating to Defendant making false representations and otherwise using unauthorized means to collect Uche's debt, and claims relating to the collection of a time-barred debt.  As set forth below, all of Uche's claims are dismissed with the exception of the claim relating to the collection of a time-barred debt.

### A.    Claims Relating to Verification of Uche's Debt

Uche claims that Defendant failed to adequately verify his debt and failed to provide the required notices under 15 U.S.C. § 1692g.  Uche also claims that Defendant has never provided him with the numerous categories of documents he requested.  As recently noted by a sister court, "[t]he Eighth Circuit has yet to define what constitutes adequate verification under the FDCPA." *Worch v. Wolpoff & Abramson, LLP*, 477 F. Supp. 2d 1015, 1019 (E.D. Mo. 2007).  Indeed, this court has not found any Eighth Circuit decision which clearly states what constitutes verification of a debt under the FDCPA.  As such, the court must look to other circuits for assistance.  The often-cited case of *Chaudhry v. Gallerizzo* is instructive. 174 F.3d 394 (4th Cir. 1999).  In *Chaudhry*, the court resolved the verification requirement in no uncertain terms, holding that:

> "[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is

claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. . . . Consistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Id.* at 406 (citations and quotations omitted). Relying on this determination, the Fourth Circuit affirmed the denial of relief to the consumer and agreed with the district court's finding that "verification only requires a debt collector to confirm with his client that a particular amount is actually being claimed, not to vouch for the validity of the underlying debt." *Id.* Thus, where a debt collector provided no detailed information underlying the debt, but instead provided basic information restating the amount owed by the consumer and stating that the amounts were correct, the FDCPA verification requirement was met. *Id.*

Noting that "[t]he statute does not detail what information must be included in the verification," the Tenth Circuit recently agreed with the Fourth Circuit regarding verification requirements. Relying on *Chaudhry*, the Tenth Circuit held that, 15 U.S.C. § 1692g "is not intended to give a debtor a detailed accounting of debt to be collected." *Maynard v. Cannon*, No. 08-4181, 2010 WL 4487113, at *6 (10th Cir. Nov. 10, 2010). Because the debt collector "correctly identified the original loan and the original lender," the debt collector did "all that § 1692g required it to do" and the consumer was not entitled to relief even though the consumer sought additional information relating to the underlying debt. *Id.*

Here, the undisputed facts show that B&Q sent Uche a letter on June 11, 2008, stating that it represented North Star and that B&Q was attempting to collect a debt with

8

a "principal amount" of $1,515.88.  (Filing No. 86-2, Attach. 2, at CM/ECF p. 8.)  That letter also included language indicating that Uche had the right to dispute the validity of the debt within 30 days and that, if Uche disputed the validity of the debt, B&Q would send verification of the debt.  (*Id.*)  Uche replied to the June 11, 2008, letter, informed B&Q that he "categorically disputed the validity of this debt," and requested that B&Q provide him with seven separate categories of documents and information to support the amount of the debt.  (Filing No. 100-2, Attach. 2, at CM/ECF p. 9.)  In response, B&Q sent a second letter to Uche on June 24, 2008.  (Filing No. 86-2, Attach. 2, at CM/ECF p. 9.)  In the June 30, 2008, letter, B&Q informed Uche that "the account originated as a Capital One Bank account identified with an account number of 5291071729337962, opened on May 26, 2000."  This letter also stated that the "amount due" was $2,703.77.  (*Id.*)

Summarized, the undisputed facts shows that B&Q attempted to collect a debt from Uche, informed Uche that he had a right to dispute the validity of the debt and request verification, Uche requested such verification, and B&Q sent Uche the original account information and original account holder.  Importantly, Uche does not dispute that the original account was his account and does not allege that he previously paid the debt in full.  (Filing No. 86-1, Attach. 1, at CM/ECF pp. 4-5.)  Thus, while B&Q did not (and has not ever) provided all of the documents and information that Uche believes are required to adequately verify the debt, B&Q sent enough information to show that it was not attempting to collect the debt from "the wrong person" or attempting "to collect debts which the consumer has already paid."  *Chaudhry*, 174 F.3d at 406.  The court finds that, in light of the authority set forth above, and in light of the Eighth Circuit's silence on this matter, Defendant adequately informed Uche of his right to dispute and obtain verification of his

9

debt and then adequately verified Uche's debt in the June 11, 2008, letter. As such, Uche's claim for inadequate verification of the debt under 15 U.S.C. § 1692g, his claim for failure to provide the required notices under that section, and his claim regarding Defendant's failure to provide him with all of the information requested by Uche in his letters are all dismissed with prejudice.

###### B.  Claims Relating to the Reporting of Uche's Debt

Uche claims that Defendant reported inaccurate credit information, falsely represented his debt, and furnished inaccurate information to credit reporting agencies. Uche brings these claims pursuant to § 1692e of the FDCPA and the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681. It is true that, "if a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008). However, where a debt collector does not communicate any credit information to credit reporting agencies, there is no "affirmative duty . . . to disclose that [a consumer has] disputed the debt." *Id.*

The undisputed evidence before the court shows that Defendant never communicated any information to a credit reporting agency. (Filing No. 86-1, Attach. 1, at CM/ECF pp. 14-19; Filing No. 100-2, Attach. 2, at CM/ECF p. 43.) Thus, even though Uche disputed the debt after receiving the June 11, 2008, letter, Defendant had no affirmative obligation to report to any credit reporting agency that Uche disputed the debt.[2]

---

[2]Uche submitted to the court an unauthenticated document from an entity named "CSC Credit Services" which appears to be a credit report. (Filing No. 1 at CM/ECF pp. 52-55.) Although it is not properly before the court on the pending Motions, this document shows that the only information regarding the debt appearing on Uche's credit report is that

As with his verification claims, Uche's claims under 15 U.S.C. § 1692e relating to the reporting of inaccurate credit information and false representation of information regarding his debt, and Uche's claims under the FCRA are also dismissed with prejudice.

C.   *Claims Relating to False Representations and Using Unauthorized Means to Collect Uche's Debt*

Uche's pleadings on these claims are very difficult to decipher.  As best as the court can tell, Uche claims that Defendant falsely represented the amount of his debt because the communications from Defendant contained different amounts due.  Uche also claims that Defendant used unauthorized means to collect his debt because it did not adequately verify the amount of his debt and continued to attempt to collect his debt after it received his October 16, 2008, letter.  As set forth above, Defendant adequately verified Uche's debt.  Therefore, any claim based on the failure to adequately verify the debt necessarily fails.  In addition, Uche's October 16, 2008, letter requested that Defendant "stop contacting [Uche] on the telephone and restrict your contact with [Uche] to writing."  (Filing No. 100-2, Attach. 2, at CM/ECF pp. 37-40.)  The record before the court shows that the only contact Defendant had with Uche after the October 16, 2008, letter was in writing and fully compliant with Uche's request.  Thus, Uche's claim that Defendant engaged in "harassing" conduct by contacting him after the October 16, 2008, letter is also without merit.

---

the Capital One account is in "collection" as a "charged off account" and was transferred/sold as of March 26, 2008.  (*Id.*)  Thus, even if the court considered this document, it does not show that Defendant reported any information to a credit reporting agency.

11

The only remaining claim in this category is that Defendant falsely represented the amount of Uche's debt in violation of 15 U.S.C. § 1692e. As best as the court can tell, this claim is based on Defendant's inclusion of three different numbers representing the amount of the debt in its communications with Uche. The Eighth Circuit has held that "[i]n evaluating whether a debt collection letter is false, misleading, or deceptive in violation of § 1692e, the letter must be viewed through the eyes of an unsophisticated consumer." *Peters*, 277 F. 3d at 1055. Such a test protects "consumers of below average sophistication or intelligence," but also contains an "objective element of reasonableness . . . that prevents liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* ; *see also Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317-18 (8th Cir. 2004) ("This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters.").

Here, Uche received the October 14, 2004, statement from Capital One showing that he owed $1,515.88 in charges, fees, and interest. (Filing No. 86-1, Attach. 1, at CM/ECF pp. 4-7.) As he testified at his deposition, Uche also understood that, under the terms of his agreement with Capital One, if he didn't pay his bill, "there's interest charged and fees . . . assessed." (*Id.* at CM/ECF pp. 5, 10.) Uche also testified that he understood that "principal amount" was the "original money you owe" and that the "amount due" was the "amount due that you have to pay . . . after the calculation of interest." (*Id.* at CM/ECF pp. 9-10.) The June 11, 2008, letter to Uche from B&Q stated that the "principal amount" of the debt was $1,515.88. (Filing No. 86-2, Attach. 2, at CM/ECF p. 8.) The June 30, 2008, letter to Uche from B&Q verifying the debt stated that the debt was originally a

Capital One Bank account and stated that the "amount due" was $2,703.77.  (*Id.* at CM/ECF p. 9.)  The Adams County, Nebraska District Court complaint stated that the amount "presently due and owing" as of the date of the complaint was "$2,719.57" and stated the rate of interest accrual.  (*Id.* at CM/ECF p. 10-12.)

Uche is correct that, at different points in the collection process, Defendant shared with him three different amounts.  However, the court does not agree that this information was in any way false or misleading.  Rather, the letters and the complaint filed clearly stated what the amounts represented and Uche himself clearly understood that interest and fees would be charged and what "principal amount" and "amount due" meant in this context.  Moreover, the "unsophisticated consumer" certainly understands the difference between principal and interest and that interest accrues on a debt as long as that debt remains unpaid.  In light of the undisputed evidence before the court, the court finds that Defendant did not falsely represent the amount of the debt under 15 U.S.C. § 1692e.  All of Uche's claims relating to Defendant making false representations or using unauthorized means to collect a debt are dismissed with prejudice.

> D.    *Claims Regarding the Collection of Time-Barred Debt*

Uche claims that Defendant attempted to collect a debt that was time-barred.  As this court recently pointed out, "a violation of the FDCPA has occurred when a debt collector attempts, through threatened or actual litigation, to collect on a time-barred debt that is otherwise valid." *Jenkins v. Gen. Collection Co.*, 538 F. Supp. 2d 1165, 1173-74 (D. Neb. 2008).  However, Nebraska law is unsettled regarding whether "collections of third-party (bank) credit card debt" actions are actions based on written agreements or actions based on "open accounts." *Id.*  If an action is based on a written agreement, the statute

13

of limitations under Nebraska law is five years, but if an action is based on an open account, the statute of limitations under Nebraska law is four years. *Id.*  In addition, regardless of which statute of limitations applies, under Nebraska law, "[v]oluntary payment of any part of principal or interest tolls the statute of limitations and a new right of action accrues after each payment." *Id.* at 1173 (citing *Pick v. Pick*, 171 N.W.2d 766, 767 (Neb. 1969); *Castellano v. Bitkower*, 346 N.W.2d 249, 252-53 (Neb. 1984)).

Here, the parties failed to brief the issue of which type of account Uche's Capital One Bank account was, and also failed to adequately brief which statute of limitations applies.  Further, the record before the court is ambiguous regarding Uche's charge and payment history on the account.  For example, the evidence before the court indicates that Uche may have made a payment as late as April 9, 2004 (Filing No. 86-3, Attach. 3, at CM/ECF p. 6), but other documents indicate that Uche made his last payment in October 2003 (Filing No. 1 at CM/ECF pp. 52-55).  In addition, the record is completely silent regarding Uche's charge history and only one page of the original agreement between Uche and Capital One Bank has been submitted.  In light of these ambiguities, the court will permit the parties to submit additional information regarding this issue in accordance with the instructions set forth below.

IT IS THEREFORE ORDERED that:

1.  Defendant's Motion for Summary Judgment (Filing No. 84) is granted in part. Except for Plaintiff's claim that Defendant attempted to collect a time-barred debt in violation of the FDCPA, all claims are dismissed with prejudice;

2.  Plaintiff's Motion for Summary Judgment (Filing No. 90) is denied in part and Defendant's Objection to Plaintiff's Motion for Summary Judgment (Filing No. 98) is granted in part;

14

3.      No later than **January 18, 2011**, Defendant shall submit a supplemental brief to the court addressing Uche's claim that Defendants attempted to collect a time-barred debt in violation of the FDCPA.  The supplemental brief shall address the type of account Uche opened with Capital One Bank and which statute of limitations applies.  The supplemental brief shall contain a statement of material facts and citations to all applicable law and evidence in accordance with the Federal Rules of Civil Procedure and the court's Local Rules;

4.      Also no later than January 18, 2011, Defendant shall submit a supplemental index of evidence to the court containing all evidence pertinent to the statute of limitations issue.  Such evidence shall address the payment history and charge history on Uche's account and any other information necessary to determine the statute of limitations issue and whether Defendant attempted to collect a time-barred debt;

5.      Defendant shall limit its supplemental filings to the statute of limitations issue and shall not address any issue already resolved by this court;

6.      No later than February 17, 2011, Plaintiff shall submit a response to Defendant's supplemental brief and index of evidence.  Plaintiff's response to the supplemental brief shall contain a statement of material facts and citations to all applicable law and evidence in accordance with the Federal Rules of Civil Procedure and the court's Local Rules.  If necessary, Plaintiff may also submit a supplemental index of evidence containing evidence pertinent to the statute of limitations issue;

7.      Plaintiff shall limit his response to the statute of limitations issue only and shall not submit any arguments or evidence relating to issues already resolved by this court.  In the event that Plaintiff does not limit his response as set forth in this Memorandum and Order, the court will not consider the response brief or index of evidence;

8.      No later than March 3, 2011, Defendant shall file a reply to Plaintiff's response.  **The parties are not given leave to submit any other filings other than those expressly requested by the court and the court will not consider additional filings beyond those requested;**

9.      The court will not consider evidence already filed with the court because that evidence is ambiguous.  To the extent that the parties believe some already-filed evidence is pertinent to the statute of limitations issue, that party shall re-submit the evidence in the supplemental index of evidence;

15

10.    Plaintiff's Motion to Withdraw Document (Filing No. 129) is granted;

11.    All other pending Motions and Objections are denied.

DATED this 15th day of December, 2010.

                              BY THE COURT:


                              s/Laurie Smith Camp
                              United States District Judge

_____

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S.
District Court for the District of Nebraska does not endorse, recommend, approve, or
guarantee any third parties or the services or products they provide on their Web sites.
Likewise, the court has no agreements with any of these third parties or their Web sites.
The court accepts no responsibility for the availability or functionality of any hyperlink.
Thus, the fact that a hyperlink ceases to work or directs the user to some other site does
not affect the opinion of the court.